















JPP   11/14/03   14:24

3:03-CV-02223   HARRIS V. ADERS

*1*

*CMP.*

DANIEL L. GERMAIN (State Bar No. 143334)
ROSMAN & GERMAIN LLP
815 Moraga Drive
Los Angeles, CA 90049-1633
Telephone: (310) 440-8600
Facsimile: (310) 440-8615

ROBERT B. WEISER
ERIC L. ZAGAR
ROBIN WINCHESTER
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Attorneys for Plaintiff

FILED

03 NOV 12  PM 2: 10

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HARRIS, Derivatively On Behalf of Nominal Defendant SUREBEAM CORPORATION,<br><br>     Plaintiff,<br><br>  v.<br><br>ROBERT O. ADERS, JOHN C. ARME, WILLIAM C. HALE, MICHAEL J. LICATA, LAWRENCE A. OBERKFELL, and DAVID A. RANE,<br><br>     Defendants,<br><br>  - and -<br><br>SUREBEAM CORPORATION,<br><br>     Nominal Defendant. | CASE NO.<br><br>**VERIFIED DERIVATIVE COMPLAINT FOR BREACHES OF FIDUCIARY DUTIES**<br><br>'03 CV 0 2223 JH   (POR)<br><br><u>JURY TRIAL DEMANDED</u> |

-1-

Plaintiff, by his attorneys, submits this Verified Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE OF THE ACTION

1.    This is a shareholder derivative action brought for the benefit of nominal defendant SureBeam Corporation ("SureBeam" or the "Company") against the members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive one designed to confer jurisdiction on a court of the United States which it would not otherwise have.

3.    Venue is proper in this Court because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

4.    Plaintiff Thomas Harris, a citizen of the State of Ohio, is, and was at all relevant times, a shareholder of nominal defendant SureBeam.

5.    Nominal defendant SureBeam is a Delaware corporation with its principal executive offices located at 9276 Scranton Road, Suite 600, San Diego, California 92121. According to its public filings, SureBeam is a provider of electronic irradiation systems and services for the food industry.

1      6.     Defendant John C. Arme ("Arme") has served as a director of SureBeam since April

2 2001 and Chairman of the Board since March 2003. Arme also served as Chairman of the Audit

3 Committee of the Board (the "Audit Committee") until July 2003.

4      7.     Defendant Robert O. Aders ("Aders") has served as a director of SureBeam and a

5 member of the Audit Committee since August 2002.

6      8.     Defendant William C. Hale ("Hale") has served as a director of SureBeam and a

7 member of the Audit Committee since February 2002.

8      9.     Defendant Michael J. Licata ("Licata") has served as a director of SureBeam since

9 June 2001.

10     10.     Defendant Lawrence A. Oberkfell ("Oberkfell") served as President and Chief

11 Executive Officer of SureBeam from November 1999 until his resignation in March 2003.

12     11.     Defendant David A. Rane ("Rane") serves as Executive Vice President and Chief

13 Financial Officer of SureBeam.

14     12.     Collectively, defendants Arme, Aders, Hale, Licata, Oberkfell, and Rane will be

15 referred to as the "Individual Defendants;" defendants Arme, Aders, and Hale will be referred to the

16 "Audit Committee Defendants;" and defendants Oberkfell and Rane will be referred to as the

17 "Officer Defendants."

18               **DUTIES OF THE INDIVIDUAL DEFENDANTS**

19     13.     By reason of their positions as officers and/or directors of the Company and because

20 of their ability to control the business and corporate affairs of the Company, the Individual

21 Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust,

22 loyalty, and due care, and were and are required to use their utmost ability to control and manage the

23 Company in a fair, just, honest, and equitable manner. Each director and officer of the Company

24 owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in

25 the administration of the affairs of the Company and in the use and preservation of its property and

26 assets, and the highest obligations of fair dealing.

27 /////

28 /////

14. The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

15. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

        a.      exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

        b.      exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements; and

        c.      exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP").

16. The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for SureBeam and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

        (1)     make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

        (2)     devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

            (a)     transactions are executed in accordance with management's general of specific authorization;

            (b)     transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles.

17. Moreover, according to Appendix D to Statement on Auditing Standards No. 55, ("SAS 55"), management should consider, among other things, such objectives as: (i) making certain

1  that "[t]ransactions are recorded as necessary ... to permit preparation of financial statements in

2  conformity with generally accepted accounting principles ... [and] to maintain accountability for

3  assets;" and (ii) make certain that "[t]he recorded accountability for assets is compared with the

4  existing assets at reasonable intervals and appropriate action is taken with respect to any

5  differences."

6      18.   According to SAS 55.13:

7      Establishing and maintaining an internal control structure is an important
    management responsibility. To provide reasonable assurance that an entity's
8      objectives will be achieved, the internal control structure should be under ongoing
    supervision by management to determine that it is operating as intended and that it
9      is modified as appropriate for changes in conditions.

10      19.   SureBeam's Proxy Statement filed with the SEC on April 23, 2003 discloses that

11  "The Audit Committee acts under a written charter adopted and approved by the Board. A copy of

12  the charter is attached to this Proxy Statement as Exhibit B."

13      20.   SureBeam's Audit Committee Charter provides:

14      I.  Purpose

15      The primary function of the Audit Committee (the "Committee") is
    to assist the Board of Directors in fulfilling its oversight
16      responsibilities by reviewing: the financial reports and other financial
    information provided by SureBeam Corporation (the "Corporation")
17      to designated regulatory bodies or the public; the Corporation's
    systems of internal controls regarding finance, accounting, legal
18      compliance and ethics that management and the Board have
    established; and the Corporation's auditing, accounting and financial
19      reporting processes generally. Consistent with this function, the
    Committee should encourage continuous improvement of, and should
20      foster adherence to, the Corporation's policies, procedures and
    practices at all levels. The Committee's primary duties and
21      responsibilities are to:

22      Serve as an independent and objective party to monitor the
    Corporation's financial reporting process and internal control system.
23      Review and approve all related-party transactions.

24      Review and appraise the audit efforts of the Corporation's
    independent auditors.
25
    Provide an open avenue of communication among the independent
26      auditors, financial and senior management and the Board.

27      Be directly responsible for the appointment, compensation and
    oversight of the work of the Corporation's independent auditors
28      (including resolutions of disagreements between management and the
    independent auditors regarding financial reporting).

Review and approve, in advance, all non-audit services to be performed by the Corporation's independent auditors.

II.   Composition

The Committee shall be comprised of three or more directors as determined by the Board, each of whom shall be directors who are independent of management, and free from any relationship that, in the opinion of the Board, would interfere with the exercise of his or her independent judgment as a member of the Committee. Independence shall be determined in accordance with the rules of the NASDAQ National Market ("NASDAQ") and Section 10A of the Securities Exchange Act of 1934, as amended (the "Exchange Act"). All members of the Committee shall be "financially literate" under the rules of the NASDAQ, meaning they shall have the ability to read and understand fundamental financial statements, including a company's balance sheet, income statement, and cash flow statements or shall acquire such ability within a reasonable time after being appointed to the Committee. At least one member of the Committee shall have past employment experience in finance or accounting, professional certification in accounting, experience being a chief executive officer, chief financial officer or other senior officer with financial oversight responsibilities, or any other comparable experience or background resulting in financial sophistication. At least one member of the Committee shall be an "audit committee financial expert" as defined in Item 401 of Regulation S-K as promulgated under the Exchange Act.

The members of the Committee shall be elected by the Board at the annual organizational meeting of the Board or until their successors shall be duly elected and qualified. Unless a Chair is elected by the full Board, the members of the Committee may designate a Chair by majority vote of the full Committee membership.

III.   Meetings

The Committee shall meet at least four times annually, or more frequently as circumstances dictate. As part of its job to foster open communications, the Committee shall meet at least annually with management and the independent auditors in separate executive sessions to discuss any matters that the Committee or either of these groups believe should be discussed. In addition, the Committee should meet with the independent auditors and management quarterly to review the Corporation's financials consistent with Section IV below.

IV.   Responsibilities, Duties and Powers

Documents/ Reports Review

1. Review and update this Charter periodically, at least annually, as conditions dictate.

2. Review the Corporation's annual financial statements and any reports or other financial information submitted to designated regulatory bodies as identified from time to time (currently the

Securities and Exchange Commission and the NASDAQ Exchange) or the public, including any certification, report, opinion or review rendered by the independent auditors.

3. Review each 10-Q and 10-K prior to its filing and each related quarterly or annual earnings report, as applicable, prior to its release.

Independent Auditors

4. Recommend to the Board the selection of independent auditors, considering independence and effectiveness, and approve the fees and other compensation to be paid to the independent auditors. On an annual basis, the Committee shall ensure its receipt from the independent auditors of a formal written statement delineating all relationships between the auditor and the Corporation and shall review and discuss with the auditors all relationships or services that may impact the objectivity and independence of the auditors.

5. Review the performance of the independent auditors and, when circumstances warrant, recommend to the Board any proposed discharge of the independent auditors.

6. Periodically consult with the independent auditors out of the presence of management about internal controls and the fullness and accuracy of the Corporation's financial statements.

7. Make recommendations to the Board with regard to appropriate action to be taken to oversee the independence of the outside auditor.

8. Receive direct reports from the Corporation's independent auditors.

Financial Reporting Processes

9. In consultation with the independent auditors, review the integrity of the Corporation's financial reporting processes, both internal and external.

10. Consider the independent auditors' judgments about the quality and appropriateness of the Corporation's accounting principles as applied in its financial reporting.

11. Consider and approve, if appropriate, major changes to the Corporation's auditing and accounting principles and practice as suggested by the independent auditors or management.

12. Request confirmation that the Chief Executive Officer, Chief Financial Officer and all Section 16 officers have reviewed the Corporation's public disclosure prior to filing with the Securities and Exchange Commission.

Process Improvement

13. Establish regular and separate systems of reporting to the Committee by each of management and the independent auditors regarding any significant judgments made in management's preparation of the financial statements and the view of each as to the appropriateness of such judgments.

-7-

14. Following completion of the annual audit, review separately with each of management and the independent auditors any significant difficulties encountered during the course of the audit, including any restrictions on the scope of work or access to required information.

15. Review any significant disagreement among management and the independent auditors in connection with the preparation of the financial statements.

16. Review with the independent auditors and management the extent to which changes or improvements in financial or accounting practices, as approved by the Committee, have been implemented. (This review should be conducted at an appropriate time subsequent to implementation of changes or improvements, as decided by the Committee.)

Complaints

17. Establish procedures for the receipt, retention and treatment of complaints received by the Corporation regarding accounting, internal accounting controls, or auditing matters.

18. Establish procedures for the confidential, anonymous submission by employees of the Corporation of concerns regarding questionable accounting or auditing matters.

Ethical and Legal Compliance

19. Review management's monitoring of compliance with the Corporation's Code of Ethical Conduct and ensure that management has the proper review system in place to ensure enforcement.

20. Review, with the Corporation's counsel, legal compliance matters including corporate securities trading policies.

21. Review, with the Corporation's counsel, any legal matter that could have a significant impact on the Corporation's financial statements.

22. Have the power to conduct or authorize investigations into matters within the Committee's scope of responsibilities and retain independent counsel, accountants or others to assist it in the conduct of an investigation.

23. Perform any other activities consistent with this Charter, the Corporation's By-laws and governing law, as the Committee or the Board deems necessary or appropriate.

24. Notwithstanding any of the foregoing, the potential legal liability of the Committee members shall be no greater than that of other members of the Board.

21.     As alleged in detail below, the Individual Defendants failed to implement and maintain an adequate internal accounting control system for SureBeam, and thereby violated: (i) their

-8-

fiduciary duty of good faith; (ii) GAAP; and (iii) as to the Audit Committee Defendants, their duties under the Audit Committee Charter.

## FACTUAL ALLEGATIONS

22.   On June 10, 2003, SureBeam announced that the Audit Committee had terminated the Company's outside auditor KPMG, LLP after only 15 months' service:

> The Audit Committee of the Board of Directors of SureBeam Corporation (referred to as "SureBeam," "our," or "we") considers and selects our independent auditor. As recommended and directed by our Audit Committee, on June 3, 2003 we terminated KPMG LLP ("KPMG") as SureBeam's independent auditor and effective June 9, 2003, Deloitte & Touche LLP ("Deloitte & Touche") was named as our independent auditor for the year ending December 31, 2003. KPMG was appointed the independent auditor of SureBeam on April 15, 2002, following the dismissal of Arthur Andersen LLP ("Arthur Andersen") on April 9, 2002.

23.   On July 30, 2003, SureBeam announced:

> SureBeam Corporation (Nasdaq: SURE) announced today that it is delaying the release of its second quarter earnings from its planned date of July 31, 2003. As previously reported by the Company in its Current Report on Form 8-K/A filed on June 11, 2003, on June 9, 2003, Deloitte & Touche LLP ("Deloitte & Touche") was named as the Company's independent auditor for the year ending December 31, 2003, replacing KPMG LLP. The Company's management has not completed preparation of the financial statements for the second quarter and Deloitte & Touche has not yet completed its review of those statements. In particular, Deloitte & Touche has not completed their analysis on particular contracts and the Company's accounting treatment used for such contracts.

24.   SureBeam's announcement of July 30, 2003 had an immediate material effect on the price of SureBeam common stock, which plunged 16%, from $2.44 to $2.05, on that day.

25.   On August 12, 2003, SureBeam announced:

> SureBeam Corporation (Nasdaq: SURE) announced today that it is further delaying the release of its second quarter earnings from its planned release date of August 12, 2003. The Company plans to file a Form 12b-25 with the Securities and Exchange Commission in connection with the Company's Form 10-Q for the second quarter of 2003 and the announcement of the Company's results for the second quarter of 2003 will be delayed until after the Company's Form 10-Q for the second quarter has been filed.
>
> Deloitte & Touche LLP ("Deloitte & Touche") has not completed its reviews of the Company's financial statements. In particular, Deloitte & Touche has not completed its analysis on the accounting for specific contracts in prior years and the Company's accounting treatment used for its contracts.

As previously announced by the Company in its Current Report on
Form 8-K/A filed on June 11, 2003, on June 9, 2003, Deloitte &
Touche LLP was named as the Company's independent auditor for the
year ending December 31, 2003, replacing KPMG LLP.

26.     On August 21, 2003, SureBeam announced that the Audit Committee had terminated

Deloitte & Touche, LLP ("Deloitte") as the Company's outside auditor after only two months'

service, and that Deloitte had identified "issues" regarding SureBeam's accounting and revenue

recognition practices:

SureBeam Corporation (Nasdaq: SURE) announced today that it is
dismissing its independent public auditor Deloitte & Touche LLP
("Deloitte & Touche"). On June 9, 2003, Deloitte & Touche was
named as SureBeam's independent auditor for the year ending
December 31, 2003, replacing KPMG LLP. Deloitte & Touche has
raised issues of concern regarding accounting treatment used by
SureBeam for certain transactions beginning in 2000. The Audit
Committee and the Board of Directors of SureBeam have discussed
these issues of concern with Deloitte & Touche and with SureBeam
management.

The Company believes that its financial statements, which were
audited by national accounting firms and filed with the Securities and
Exchange Commission, were appropriate based on the facts and
circumstances that existed at the time. However, the Board of
Directors has determined that the issues raised by Deloitte & Touche
are sufficiently important that it wants these issues to be definitively
resolved. Accordingly, the Board's Audit Committee is interviewing
other national accounting firms for the purpose of conducting an
independent review of these issues.

The primary issues which had not been resolved to the satisfaction of
Deloitte & Touche involve certain aspects of SureBeam's revenue
recognition policies and certain contracts entered into in 2000 and
affecting subsequent periods, all of which have been disclosed in
various filings with the SEC, including SureBeam's Registration
Statement on Form S-1, declared effective by the Securities and
Exchange Commission on March 15, 2001, and SureBeam's Forms
10-K for the years ended December 31, 2001 and 2002. Each of these
filings contained financial statements which had been audited by
national accounting firms.

Deloitte & Touche, recently retained on June 9, 2003 as SureBeam's
independent auditor, has not performed an audit of SureBeam's
financial statements, nor has it completed the review for the quarter
ended June 30, 2003, which would have been the first review it
performed for SureBeam.

John Arme, the Chief Executive Officer and Chairman of the Board
stated, "We do not want questions about prior accounting decisions
to continually affect SureBeam's ability to grow. The Board feels that
the only way to put these issues to rest is to have these issues
reviewed and resolved as soon as possible."

1            SureBeam will file a Current Report on Form 8-K providing further description regarding the dismissal of Deloitte & Touche and the issues raised.

2

3            The Audit Committee will interview independent public auditors for the purpose of replacing Deloitte & Touche. The Audit Committee has directed Deloitte & Touche to provide complete information regarding its accounting analysis to SureBeam's successor auditor when such is appointed.

4

5

6    27.    On August 25, 2003, SureBeam announced:

7            SureBeam Corporation ("SureBeam") announced that beginning today the Company will now trade under the ticker symbol "SUREE". This action is a result of the Company missing its deadline to file its Form 10-Q in accordance with Nasdaq Marketplace Rule 4310(c)(14). As required by exchange rules, SureBeam was notified of this action by receipt of a Nasdaq Staff Notification sent on August 21, 2003.

8

9

10

11           Nasdaq rules also state that when a Form 10-Q deadline is missed, Nasdaq is required to notify the company in question that its common stock will be delisted automatically from the Nasdaq Exchange at a pre-determined date, unless the company requests a hearing on the issue. As such, Nasdaq has notified SureBeam that the pre-determined date is scheduled for the opening of business on September 2, 2003, unless they receive a request for a hearing to attempt to prevent the delisting. SureBeam intends to request such a hearing in accordance with Nasdaq's rules.

12

13

14

15

16    28.    On August 26, 2003, SureBeam announced:

17           The Audit Committee of the Board of Directors of SureBeam Corporation (referred to as "SureBeam," "our," or "we") considers and selects our independent auditor. As directed by our Audit Committee, on August 19, 2003, we dismissed Deloitte & Touche LLP ("Deloitte & Touche") as SureBeam's independent auditor.

18

19

20           Deloitte & Touche was engaged as the independent auditor of SureBeam on June 9, 2003, following our dismissal of KPMG LLP ("KPMG") on June 3, 2003. At the time of its termination, Deloitte & Touche was conducting its review of SureBeam's financial statements to be included in the Quarterly Report on Form 10-Q for the quarter ended June 30, 2003. This was the first quarterly review that Deloitte & Touche had been engaged to conduct in its capacity as SureBeam's independent auditor.

21

22

23

24

25           At the time of Deloitte & Touche's termination, there were no disagreements on any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure, which disagreements, if not resolved to the satisfaction of Deloitte & Touche, would have caused it to make reference to the subject matter of the disagreements in connection with its report except for the matters discussed in the following two paragraphs.

26

27

28

On July 29, 2003, Deloitte & Touche notified SureBeam's Audit Committee that it had concerns about the accounting for certain transactions, and that it would need to significantly expand the scope of its review procedures. Deloitte & Touche specifically identified a transaction between SureBeam and Tech Ion Industrial Brasil, S.A. entered into in 2000 which affects 2000 and subsequent periods, that it believed, absent additional evidence, was not accounted for in accordance with generally accepted accounting principles ("GAAP"). Deloitte & Touche advised the Audit Committee that it would not be able to conclude its review of our financial statements for the quarter ended June 30, 2003 until this and certain other matters described below, were satisfactorily resolved. Subsequently, the documentation and other evidence provided by SureBeam was considered by Deloitte & Touche to be insufficient for the resolution of this issue to its satisfaction.

Deloitte & Touche also expressed concern as to the appropriateness of utilizing the percentage of completion method for revenue recognition, and, if appropriate, whether the cost to total cost approach for calculating the percentage complete was appropriate under the circumstances. In addition, Deloitte & Touche expressed concern as to the recognition of revenues and profits with respect to our relationship with Texas A&M University. These matters remained unresolved at the time of Deloitte & Touche's dismissal.

Deloitte & Touche had various meetings with our Audit Committee and our Board of Directors regarding accounting issues, including the issues described above. SureBeam has authorized Deloitte & Touche to respond fully to the inquiries of SureBeam's successor auditor, when such is engaged, regarding any and all of our accounting issues.

The Audit Committee intends to interview potential independent public auditors for the purpose of replacing Deloitte & Touche. The Audit Committee of SureBeam also intends to interview other national accounting firms for the purpose of conducting an independent review of the accounting issues raised by Deloitte & Touche.

29.   On October 1, 2003, SureBeam announced that Jack A. Henry, who had joined the Board as a director and Chairman of the Audit Committee on July 27, 2003, had resigned from the Board after only two months' service.

30.   On October 23, 2003, SureBeam announced:

SureBeam Corporation (Nasdaq: SUREE) today announced it has secured approximately $5 million in equity financing from three institutional investors in the form of a private placement. The proceeds will be used for working capital needs and general corporate purposes.

"This new infusion of cash has given us additional time to work to complete our review and refocus on a more profitable business model," said Terrance J. Bruggeman, SureBeam's president and chief

-12-

executive officer. "We will continue to evaluate current processes and procedures as we develop a new business strategy. I appreciate these investors' confidence in our company."

Financing Details

The financing consists of 673 shares of newly-created Class A Convertible Preferred Stock. The Preferred Stock is convertible into shares of the company's common stock at a conversion price of $0.95 per share. Including the anticipated net proceeds of the offering of $4.5 million, as of October 22, 2003, the company had available cash of approximately $7.5 million.

As part of the transaction, SureBeam also issued to the investors warrants entitling them to purchase, for a five-year period, an aggregate of up to approximately 2,700,000 shares of common stock, at an exercise price of $1.00 per share.

Financial Update

The company has filed a Form 8K-A with the Securities and Exchange Commission detailing the terms of the financing. The report also provides updates on the company. As of September 30, 2003, we had cash and cash equivalents of approximately $3.6 million, as compared with $27.3 million at December 31, 2002 and $11.8 million at June 30, 2003. As previously disclosed, we have implemented a cost reduction plan, and we are studying our business model to identify further non-essential expenditures. As a result of our continued losses and current cash resources, we will need to raise additional funds through public or private equity or debt financings, collaborative relationships or other arrangements in order to execute our business strategy and continue our operations.

If our common stock is delisted from NASDAQ, as discussed below, it may have a detrimental impact upon our ability to obtain additional capital through equity financings. As previously disclosed, for the distribution of our stock by The Titan Corporation ("Titan") to continue to qualify as tax- free, there must not be a change in ownership of 50% or more in either the voting power or value of either our stock or Titan's stock that is considered to be part of a plan or a series of related transactions related to Titan's distribution of our stock to its stockholders. Accordingly, we believe that our completion of the offering of the Preferred Stock may limit us from engaging in any further equity financing until August 2004, when the restrictions on equity issuances from the tax-free distribution expire. In connection with our spin-off from Titan, we agreed that we would not take any action that would cause the spin-off to be taxable to Titan.

Corporate Governance

As previously disclosed, on August 21, 2003, we dismissed Deloitte & Touche LLP as our independent auditor. As of the date of this report, we do not yet have a successor independent auditor. Therefore, we have been unable to complete an auditor review of our Form 10-Q for the quarter ended June 30, 2003 (the "Form 10-Q"), and file such

1    Form 10-Q.

2    As previously disclosed, due to our failure to file the Form 10-Q, we
     have been notified by NASDAQ that we were in violation of its rules
3    and that our common stock could be delisted from the NASDAQ. On
     September 25, 2003, we had a hearing before a NASDAQ Listing
4    Qualifications Panel to review issues related to the late filing of the
     Form 10-Q, including whether our common stock would continue to
5    be listed on NASDAQ. We have not yet been informed as to the
     outcome of the hearing; however, we expect to be notified by
6    NASDAQ as to the outcome of the hearing during October, 2003.

7    As previously disclosed, effective September 30, 2003, Jack A.
     Henry, resigned from his positions as Director, member of our
8    Compensation Committee, and member and chairman of our Audit
     Committee. This left our Audit Committee with only two members
9    while NASDAQ rules require our Audit Committee to have three
     members. NASDAQ contacted us regarding our noncompliance with
10   its Audit Committee requirements and reiterated that continued listing
     on the NASDAQ requires compliance with its rules. We are currently
11   conducting interviews of additional Director and Audit Committee
     candidates.

12
     Our Audit Committee engaged a national accounting firm as of
13   August 26, 2003, to conduct an independent review and evaluation of
     various accounting issues raised by Deloitte and Touche LLP, our
14   previous auditors. Our Audit Committee has also engaged Latham &
     Watkins to act as special counsel to the Audit Committee to assist it
15   in conducting its review of the accounting and auditor issues facing
     SureBeam.

16

17       31.    SureBeam's announcement of October 23, 2003 had an immediate material effect

18   on the price of SureBeam common stock, which plummeted more than 38%, from $1.06 to $0.65,

19   on that day.

20       32.    On October 27, 2003, SureBeam announced:

21       SureBeam Corporation (Nasdaq: SUREE) today announced that its
         common stock will be delisted from the Nasdaq National Market at
22       the opening of trading on October 28, 2003 because the company has
         not filed periodic reports with the Securities and Exchange
23       Commission. The company met with a Nasdaq Qualifications Panel
         on September 25, 2003 concerning its listing on Nasdaq. The
24       company was notified of the panel's decision to delist its stock.

25       33.    Since SureBeam has been delisted from Nasdaq, the price of its common stock has

26   slumped to less than $0.23 per share.

27   /////

28   /////

-14-

1

**The Individual Defendants Abdicate Their Fiduciary Duties**

2     34.     The Individual Defendants, particularly the Audit Committee Defendants and the

3 Officer Defendants, received numerous reports regarding problems with SureBeam's accounting and

4 revenue recognition practices.  Such reports were glaring "red flags" which indicated that

5 SureBeam's internal controls were utterly deficient.

6     35.     In breach of both their fiduciary duty of good faith and, as to the Audit Committee

7 Defendants, their responsibilities pursuant to the Audit Committee Charter, the Individual

8 Defendants wilfully ignored the obvious and pervasive problems with SureBeam's accounting and

9 revenue recognition practices.  The Individual Defendants made no effort to establish and maintain

10 adequate internal accounting controls for SureBeam to ensure that the Company's financial results

11 were calculated and recorded in accordance with GAAP.

12     36.     The foregoing misconduct of the Individual Defendants has caused SureBeam to

13 suffer enormous damages, including, but not limited to, costs and expenses associated with the

14 Company's continuing internal review of its accounting and revenue recognition practices, and the

15 inability to obtain additional capital through equity financing.

16

**DERIVATIVE AND DEMAND REFUSED ALLEGATIONS**

17     37.     Plaintiff brings this action derivatively in the right and for the benefit of

18 SureBeam to redress the breaches of fiduciary duty by the defendants.  This is not a collusive action

19 to confer jurisdiction on this Court which it would not otherwise have.

20     38.     Plaintiff will adequately and fairly represent the interests of SureBeam and its

21 shareholders in enforcing and prosecuting its rights.

22     39.     Plaintiff is an owner of SureBeam common stock and was an owner of

23 SureBeam common stock at all times relevant hereto.

24     40.     On September 23, 2003, plaintiff made a demand upon the Board to commence this

25 action.  A copy of plaintiff's demand is attached hereto as Exhibit A.

26     41.     On October 31, 2003, Russell A. Gold, Esquire of Luce, Forward, Hamilton &

27 Scripps, LLP, acting on behalf of the Board, refused plaintiff's demand.  A copy of Mr. Gold's

28 refusal is attached hereto as Exhibit B.

1    42.    It is apparent from Mr. Gold's letter that the Board has not considered plaintiff's

2    demand in good faith and has made no effort to investigate plaintiff's allegations.

3                                            **COUNT I**
                              **AGAINST THE INDIVIDUAL DEFENDANTS**
4                      **FOR BREACH OF FIDUCIARY DUTY OF GOOD FAITH**

5    43.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully

6    set forth herein.

7    44.    As alleged in detail herein, each of the Individual Defendants had a duty to exercise

8    good faith in establishing and maintaining adequate internal accounting controls to ensure that the

9    Company's financial results were recorded in compliance with GAAP.

10   45.    The Individual Defendants did not establish and maintain adequate internal

11   accounting controls for SureBeam and did not make a good faith effort to do so; thus, they abdicated

12   their fiduciary duty of good faith.

13   46.    As a direct and proximate result of the Individual Defendants' foregoing breaches of

14   fiduciary duties, the Company has suffered enormous damages, including, but not limited to, costs

15   and expenses associated with the Company's continuing internal review of its accounting and

16   revenue recognition practices, and the inability to obtain additional capital through equity financing.

17

18   WHEREFORE, plaintiff demands judgment as follows:

19   A.    Against all of the Individual Defendants and in favor of the Company for the amount

20         of damages sustained by the Company as a result of the Individual Defendants'

21         breaches of fiduciary duties;

22   B.    Awarding to plaintiff the costs and disbursements of the action, including reasonable

23         attorneys' fees, accountants' and experts' fees, costs, and expenses; and

24   C.    Granting such other and further relief as the Court deems just and proper.

25   //////

26   /////

27   /////

28   /////

-16-

1

**JURY DEMAND**

2      Plaintiff demands a trial by jury.

3                                 Respectfully submitted,

4   DATED: November 11, 2003           ROSMAN & GERMAIN LLP
                                       Daniel L. Germain

5

6                                 SCHIFFRIN & BARROWAY, LLP
                                Robert B. Weiser
                                Eric L. Zagar

7                                 Robin Winchester

8

9

By:

10                                 Daniel L. Germain
                                Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

# SCHIFFRIN & BARROWAY, LLP

RICHARD S. SCHIFFRIN*
ANDREW L. BARROWAY*
MARC A. TOPAZ*
DAVID KESSLER*
KRISHNA B. NARINE
KATHARINE M. RYAN
STUART L. BERMAN*
JACOB A. GOLDBERG

° ADMITTED IN NJ
* ALSO ADMITTED IN CA
* ALSO ADMITTED IN DE
* ALSO ADMITTED IN IL
* ALSO ADMITTED IN NJ
° ALSO ADMITTED IN NY

ATTORNEYS AT LAW
THREE BALA PLAZA EAST
SUITE 400
BALA CYNWYD, PENNSYLVANIA 19004
(610) 667-7706

FAX: (610) 667-7056

GREGORY M. CASTALDO*
DARREN J. CHECK*
EDWARD W. CIOLKO°
SEAN M. HANDLER
SCOTT K. JOHNSON*
RICHARD A. MANISKAS
STEPHEN P. McFATE
JOSEPH H. MELTZER*
TOBIAS L. MILLROOD*
CHRISTOPHER L. NELSON
LEE D. RUDY°
KAY E. SICKLES*
MARC D. WEINBERG*
PATRICIA C. WEISER*
ROBERT B. WEISER*
MARC I. WILLNER
MICHAEL K. YARNOFF**
ERIC L. ZAGAR
ANDREW L. ZIVITZ*

September 23, 2003

**VIA CERTIFIED MAIL**
Mr. John C. Arme
Chairman of the Board
SureBeam Corporation
9276 Scranton Road
Suite 600
San Diego, CA 92121

Re:   **Shareholder Demand Pursuant to Del. Ct. Ch. Rule 23.1**

Dear Mr. Arme:

This firm represents Thomas Harris, the holder of shares of common stock of SureBeam Corporation ("Surebeam" or the "Company"). Pursuant to Del. Ct. Ch. Rule 23.1, I write on behalf of Mr. Harris to demand that the Board of Directors of SureBeam (the "Board") take action to remedy breaches of fiduciary duties by the officers and directors of the Company.

As you are aware, by reason of their positions as officers and/or directors of SureBeam and because of their ability to control the business and corporate affairs of SureBeam, the officers and directors of the Company owe SureBeam and its shareholders the fiduciary obligations of good faith, loyalty, and due care, and are required to use their utmost ability to control and manage SureBeam in a fair, just, honest, and equitable manner. Mr. Harris believes that the officers and directors of SureBeam violated these core fiduciary duty principles, causing SureBeam to suffer damages.

Mr. Harris contends that since 2000, SureBeam, with the knowledge, approval, and/or acquiescence of the Board, violated Generally Accepted Accounting Principles ("GAAP") by, among other things, improperly recognizing revenue on uncollectible accounts receivable. Mr. Harris contends that the Board knowingly approved, or was grossly negligent in failing to prevent and correct, the Company's improper revenue recognition practices.

19

Mr. Harris maintains that the officers and directors of SureBeam, including former director and Chief Executive Officer Lawrence Oberkfell ("Mr. Oberkfell") and Chief Financial Officer David Rane ("Mr. Rane"), breached their fiduciary duties by: (i) knowingly approving the Company's accounting and revenue recognition improprieties; and/or (ii) abdicating their responsibility to make a good faith effort to oversee the Company's operations, accounting and revenue recognition practices.   Mr. Harris believes that the acts (and failures to act) described above represent a systematic failure of the Board to effectively manage the affairs of SureBeam. Among other things, it is apparent that the Board has failed to implement necessary oversight procedures and controls to effectively manage SureBeam.  The Board's systematic failure to properly manage the Company violates the directors' fiduciary duties of loyalty and good faith. As a result of the Board's multiple breaches of duty, SureBeam has sustained damages, including, but not limited to, damages associated with the Company's potential delisting from the Nasdaq Stock Market.

Pursuant to Del. Ct. Ch. Rule 23.1, on behalf of Mr. Harris, I hereby demand that the Board commence a civil action against each of the directors of SureBeam, Mr. Oberkfell, and Mr. Wolf to recover for the benefit of the Company the amount of damages sustained by the Company as a result of their breaches of fiduciary duties alleged herein.

If within a reasonable period of time after receipt of this letter the Board has not commenced an action as demanded herein, Mr. Harris will commence a shareholder's derivative action on behalf of SureBeam seeking appropriate relief.

Very truly yours,

SCHIFFRIN & BARROWAY, LLP

Eric L. Zagar

# LUCE FORWARD

ATTORNEYS AT LAW • FOUNDED 1873

Luce, Forward Hamilton & Scripps LLP

RUSSELL A. GOLD  PARTNER
DIRECT DIAL NUMBER 619.699.2462
DIRECT FAX NUMBER 619.744.3685
EMAIL ADDRESS RGOLD@LUCE.COM

600 West Broadway
Suite 2600
San Diego, CA 92101
619.236.1414
619.232.0311 fax
www.luce.com

October 31, 2003

Eric L. Zagar, Esq.
Schiffrin & Barroway, LLP
Three Bala Plaza East
Suite 400
Bala Cynwyd, Pennsylvania  19004

Re:   Shareholder Demand Pursuant to Del. Ct. Ch. Rule 23.1

Dear Mr. Zagar:

We have been provided a copy of your letter to Mr. John Arme of the SureBeam Corporation. Your letter demands that the Board of Directors for SureBeam Corporation commence a civil action against each of the directors of SureBeam, Mr. Lawrence Oberkfell and Mr. Wolf [sic].

Please be advised that the Corporation will investigate any claims properly brought to the Company's attention and will determine whether it is in its best interest to proceed with any lawsuit on the Corporation's behalf. However, your letter to SureBeam's former Chairman fails to satisfy the particularity requirements of Delaware Ct. Ch. Rule 23.1. Any such demand must (1) identify the alleged wrongdoers, (2) describe the factual basis of the alleged acts, (3) describe the harm caused to the corporation, and (4) request remedial relief.

Your letter fails to describe with particularity the factual basis that would give rise to liability on behalf of the Corporation, or the individuals responsible (other than to provide a non-inclusive list "including former director and Chief Executive Officer Lawrence Oberkfell and Chief Financial Officer David Rane"). Nor does the letter describe with any particularity the harm to SureBeam caused by the unspecified acts.

Instead, the letter contains broad, general assertions that Mr. Oberkfell and Mr. Rane, and other unnamed officers and directors, breached their fiduciary duties by approving unspecified "accounting and revenue recognition improprieties" and somehow "abdicating their responsibility to make a good faith effort to oversee [unspecified] operations, accounting and revenue recognition practices."

22

# LUCE FORWARD
ATTORNEYS AT LAW · FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Eric L. Zagar
October 31, 2003
Page 2


This is insufficient to state a demand under the Delaware Ct. Ch. Rule 23.1.

Very truly yours,

Russell A. Gold
of
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

RAG/mm

23

## VERIFICATION

I, Thomas Harris, hereby verify that I have reviewed the Complaint

and authorized its filing and that the foregoing is true and correct to the best of my knowledge,

information and belief.

DATE: _Nov. 7, 2003_

_____
**THOMAS HARRIS**

Harris.Ver

24

JS44
(Rev. 07-89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

THOMAS HARRIS, Derivatively On Behalf of Nominal Defendant SUREBEAM CORPORATION

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**    Ohio
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Rosman & Germain LLP 310.440.8600
Daniel L. Germain (State Bar No. 143334)
815 Moraga Drive
Los Angeles, California 90049-1633

**DEFENDANTS** ROBERT O. ADERS, JOHN C. ARME, WILLIAM C. HALE, MICHAEL J. LICATA, LAWRENCE A. OBERKFELL, and DAVID A. RANE, Defendants, and SUREBEAM CORPORATION, Nominal Defendant.

03 NOV 12 PM 2: 14

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)    _____

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**ATTORNEYS (IF KNOWN)**

'03 CV 0 2223 JH    (POR)

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX
(For Diversity Cases Only)      FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)**

28 U.S.C. Section 1332(a)(2)       28: 1332 Fd (DP)

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | FORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| | | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | |
| ☒ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23    DEMAND $ in excess of $75,000.00    Check YES only if demanded in complaint: JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE _____   Docket Number _____

DATE  11/11/03       SIGNATURE OF ATTORNEY OF RECORD _____

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

PC #150.00   11/12/63   #98712 VP